IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MARY ROBERTSON, an individual,    )
    )
        Plaintiff,    )    Civil Case No. 05-1667-KI
    )
    vs.    )    OPINION AND ORDER
    )
BROADSPIRE NATIONAL SERVICES    )
AND HIGHMARK LIFE INSURANCE    )
COMPANY,    )
    )
        Defendants.    )

    Megan E. Glor
    Mike Lopez
    Megan E. Glor, Attorneys at Law, P.C.
    621 SW Morrison, Suite 900
    Portland, Oregon  97205

        Attorneys for Plaintiff

    Bruce A. Rubin
    Alyssa E. Tormala
    Miller Nash LLP
    3400 U.S. Bancorp Tower
    111 S.W. Fifth Avenue
    Portland, Oregon  97204-3699

        Attorneys for Defendants

KING, Judge:

Plaintiff Mary Robertson alleges a claim under ERISA, contending that defendant Highmark Life Insurance Company ("Highmark") wrongfully denied her disability benefits. Before the court is Highmark's Motion for Summary Judgment (#29) and Robertson's Motion for Summary Judgment (#32). For the reasons below, both motions are denied and the issue will be resolved in a court trial.

## FACTS

I.    <u>The Plan's Terms</u>

Mary Robertson worked for Recreational Equipment, Inc. ("REI") as an Operations Manager. She was a participant in the REI Group Short-Term and Long-Term Disability Insurance Plan ("Plan"). Stipulation Regarding Plan Document and Administrative Record [hereinafter Stip.] Ex. 1. The Plan is an employee welfare benefits plan covered under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 <u>et seq</u>.

REI is the policyholder for the Plan. The parties agree that the Plan grants full discretion to Highmark to make benefit decisions.

> We[1] reserve full discretion and authority to manage the Group Policy, administer claims, and interpret all Group Policy terms and conditions. This includes, but is not limited to, the right to:
>
> 1. Resolve all matters when a review has been requested;
>
> 2. Establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
>
> 3. Determine your eligibility for Coverage;

---

[1] "Highmark Life Insurance Company will be referred to in this Certificate as 'we,' 'our,' or 'us.'" Stip. Ex. 1 at 1.

4.  Determine whether proof of your loss is satisfactory for receipt of benefit payments according to the terms and conditions of the Group Policy.

Stip. Ex. 1 at 28-29.

Highland retained Broadspire National Services as the third-party disability claims administrator for the Plan.  The Plan states that the claimant should notify Highmark or its authorized representative, of the disability.  Stip. Ex. 1 at 23.

For the purpose of long-term disability coverage for the first two years following an illness or injury, the Plan defines "disability" as:

Disability or disabled means our determination that a change in your functional capacity to work as a result of your Medical Condition began while you are covered under the Group Policy and:

During the LTD Benefit Qualifying Period and the following 24 months:

• prevents you from performing the Essential Functions of your Regular Occupation or of a Reasonable Employment Option offered to you by the Policyholder; and

• as a result you are unable to earn more than 80% of your Predisability Monthly Income.

Stip. Ex. 1 at 14 (emphasis omitted).

II.    Robertson's Claim

Robertson was diagnosed with fibromyalgia in July 2003 by a Mayo Clinic rheumatologist.  On November 26, 2003, she went on a medical leave and never returned to work.  Robertson filed a claim for disability benefits under the Plan on April 28, 2004, based on fibromyalgia, sleep disorder, restless leg syndrome, and irritable bowel syndrome.  Robertson supported her claim with the opinion of her treating physician, Dr. Cordes, who completed an Attending Physician's Statement.  Dr. Cordes listed Robertson's restrictions, defined on the

Statement to be activities that the patient *should not* do, as no high stress situations and no activities requiring extensive concentration or calculation.  Dr. Cordes did not list any limitations, defined to be activities that the patient *cannot* do.  She listed Robertson's impairments as severe pain and fatigue limiting her ability to be awake and active.  Stip. Ex. 2 at 36.

Broadspire submitted Robertson's information to two peer review physicians with specialties in rheumatology and psychology, the relevant fields of medicine.  On June 3, 2004, Broadspire wrote Robertson to deny her claim because the medical documentation did not support her inability to perform the duties of her own occupation.  On November 30, 2004, Robertson appealed the denial to Broadspire and submitted additional information.

On December 8, 2004, Lina Camacho of Broadspire sent Robertson's medical records, job description, and additional information provided by Robertson to additional peer review physicians in relevant medical specialties: neurology, psychiatry, and rheumatology.

On January 6, 2005, Broadspire submitted Robertson's appeal and claim file to Highmark's Appeal Committee for review.  Jeff McLaughlin, Business Staff Analyst at Highmark, sent Robertson's file to Highmark's medical director, Dr. William Goldfarb, for review on February 2, 2005.  Dr. Goldfarb concluded that there was no objective evidence that would serve to support a functional impairment which would preclude Robertson's ability to function at a medium level occupation.

On February 4, 2005, McLaughlin informed Broadspire that Highmark was upholding the denial of benefits.

By letter dated February 11, 2005, Broadspire notified Robertson's attorney that the Highmark Appeal Committee was denying her claim.

McLaughlin is in charge of the appeals process for Highmark under the Plan. McLaughlin states that Highmark does not "rubber stamp" the initial determination of Broadspire. Highmark obtains a full copy of the record, reviews it independently, and makes its own decision whether to grant or deny benefits. McLaughlin knows of a number of instances when Highmark overturned Broadspire's initial determination.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.    Standard of Review

ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 113, 109 S. Ct. 948 (1989) (internal quotation and citation omitted). When a denial of benefits is challenged under ERISA's provision 29 U.S.C. § 1132(a)(1)(B), the

court's review of the administrator's decision is de novo unless the plan unambiguously confers

discretion on the administrator to determine eligibility for benefits or to construe the terms of the

plan.

> An abuse of discretion review is required
>
> whenever an ERISA plan grants discretion to the plan administrator, but a review
> informed by the nature, extent, and effect on the decision-making process of any
> conflict of interest that may appear in the record.  This standard applies to the kind
> of inherent conflict that exists when a plan administrator both administers the plan
> and funds it, as well as to other forms of conflict.
>
>           . . . .
>
>           . . . The level of skepticism with which a court views a conflicted
> administrator's decision may be low if a structural conflict of interest is
> unaccompanied, for example, by any evidence of malice, of self-dealing, or of a
> parsimonious claims-granting history.  A court may weigh a conflict more heavily
> if, for example, the administrator provides inconsistent reasons for denial; fails
> adequately to investigate a claim or ask the plaintiff for necessary evidence; fails
> to credit a claimant's reliable evidence; or has repeatedly denied benefits to
> deserving participants by interpreting plan terms incorrectly or by making
> decisions against the weight of evidence in the record.

Abatie v. Alta Health & Life Insurance Co., 458 F.3d 955, 967-69 (9th Cir. 2006) (consciously

rejecting the "sliding scale" metaphor used by several other circuits) (internal citations omitted).

"An ERISA administrator abuses its discretion only if it (1) renders a decision without

explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of

the plan, or (3) relies on clearly erroneous findings of fact."  Boyd v. Bert Bell/Pete Rozelle NFL

Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005).

Highmark contends that discretion granted by the Plan to Highmark to make benefits

decisions requires this court to review the denial of benefits under the arbitrary and capricious

standard.

Although Robertson agrees that the Plan vests Highmark with the discretionary authority to interpret the Plan's terms and make benefits decisions, she contends that the decision should be reviewed de novo because Highmark violated the Plan's provisions.

A.    <u>Document Production</u>

In response to Robertson's request of February 22, 2005, Broadspire provided documents to her on March 4, 2005 which it believed were the complete documents used in review of the claim.  In May 2006, as defense counsel was preparing to respond to Robertson's motion to compel discovery, Highmark discovered that due to an unintentional record-keeping error, 156 additional pages related to Robertson's claims had not been included with the claim file provided in March 2005.  The pages were provided to Robertson's counsel within three days of discovery of the problem.

Robertson contends that the failure to timely produce the documents caused her to suffer substantial substantive harm because she filed this action with the understanding that Highmark had not conducted any medical review of her claim (the documents first produced did not include Dr. Goldfarb's report), resulting in a de novo standard of review.  Robertson points to the time she spent seeking additional discovery about the Highmark decision-making process and the individuals involved in her appeal.

Although Highmark acknowledges the error, it contends that it is not a flagrant violation. Of the 156 pages provided late, 151 were duplicates of documents previously provided.  The remaining five pages included:  (1) McLaughlin's February 4, 2005 email to Broadspire stating that Highmark was denying Robertson's claim; (2) Broadspire's February 11, 2005 letter to someone unknown stating that the claim was denied after the final appeal; (3) Dr. Goldfarb's

one-page opinion in signed and unsigned form; and (4) McLaughlin's January 10, 2005 email to Dr. Goldfarb asking for his review of the claim.  Stip. Ex. 3 at 1-5.

Procedural violations of ERISA do not alter the standard of review unless those violations "are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm."  Gatti v. Reliance Standard Life Insurance Co., 415 F.3d 978, 985 (9th Cir. 2005).  A procedural irregularity, however, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion, similar to a conflict of interest.  "When an administrator can show that it has engaged in an on-going, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity."  Abatie, 458 F.3d at 972 (internal quotation omitted).

The timing of Highmark's failure to provide all requested documents is determinative of whether the violation is flagrant.  Robertson's request was eleven days *after* her attorney learned that the Highmark Appeal Committee denied her claim.  Consequently, the production error occurred too late to alter the relationship between Robertson and her employer or Highmark.  Moreover, the error was realized and corrected in time for this action to proceed with Robertson having the benefit of the full file.  I conclude that the error is not a violation flagrant enough to alter the standard of review.

B.    Delegation of Responsibilities

Robertson argues that her claim should be reviewed de novo because the Plan does not expressly allow Highmark to delegate fiduciary responsibilities to a third party such as

Broadspire.  Because Broadspire is not a Plan fiduciary, Robertson contends that its denial of her

claim should carry no weight and that Highmark's review of the invalid denial has no merit.

Highmark contends that the decision being reviewed here–the final decision after the

appeal process–was made by Highmark and not Broadspire.  Highmark also argues that it did not

"rubber stamp" the Broadspire decision but instead undertook further review through

Dr. Goldfarb.  Highmark contends there is no evidence that Dr. Goldfarb's opinion was based on

an intent to save Highmark money.  It also argues that nothing prevents Highmark from relying

on information gathered by others, in this instance, Broadspire.

The written instrument maintaining an ERISA plan "may expressly provide" for

procedures for named fiduciaries to designate people other than named fiduciaries to carry out

fiduciary responsibilities.  29 U.S.C. § 1105(c)(1).

It is agreed that the Plan names Highmark as a fiduciary and does not expressly provide

for Highmark to delegate its fiduciary authority to a third party.  The "authorized representative"

language stated above is insufficient to delegate fiduciary authority.  Likewise, the authority to

establish rules and procedures for the administration of the Plan is inadequate on which to base

the delegation of fiduciary authority.

Broadspire made the initial denial of the claim, based on its own investigation.  This was

not a situation in which Broadspire gathered the data and turned it over to Highmark for decision.

Broadspire made the decision, which was not contingent on acceptance by Highmark.  There also

was no automatic review of Broadspire's decision by Highmark.  Broadspire made this fiduciary

decision on its own.  I realize that the decision could be, and actually was, appealed to Highmark.

I also acknowledge that Highmark conducted further investigation once it received the appeal. But the burden was on Robertson to appeal Broadspire's decision.

The best analysis is that a fiduciary responsibility was carried out by Broadspire without proper delegation of fiduciary authority by Highmark. I conclude that under the standard stated in <u>Gatti</u>, the lack of express delegation of fiduciary authority is a procedural violation that is flagrant enough to alter the substantive relationship between Robertson and Highmark and to cause her substantive harm. Consequently, the standard of review will be changed from abuse of discretion to de novo.

II.    Review of the Denial of Benefits

Highmark notes that six peer review physicians in the relevant specialties all concluded that there was no evidence that Robertson was disabled as defined by the Plan, even though they conceded that she suffered from fibromyalgia and related problems. Based on the peer reviews, Highmark contends that its decision was not arbitrary and capricious.

Robertson argues that Highmark's appellate review was biased and inadequate. Based on its improper delegation argument, Robertson contends that Highmark only referred the appeal to its Medical Director, Dr. Goldfarb, who is also President and CEO of IMC, Inc. This company states on its web site that Dr. Goldfarb "has been a program innovator in the development of loss control approaches utilized by employers and carriers in the resolution of disability and work-related issues that impact worker productivity." Glor Decl. Ex. 1 at 1.

Robertson contends that Dr. Goldfarb is not only biased but also inadequately reviewed her claim. She notes that he did not contact her treating physicians but instead reviewed the reports of Broadspire's hired physicians and reached the conclusion consistent with his

corporation's primary goal of saving its clients money.  She further contends that his only references to her medical record were cursory and dismissive and that he ignored the monthly evaluations and the restrictions and limitations stated by her treating physician in the Fibromyalgia Medical Evaluation Form.  Robertson also contends that Highmark's one-person Appeal Committee did not conduct a meaningful review of her claim.

Under a de novo review standard, there is a clear issue of material fact on whether Robertson is disabled.  The six physicians hired by Broadspire and Highmark to review Robertson's records all concluded that she was not disabled.  On the other hand, Robertson's treating physician, Dr. Cordes, completed a Fibromyalgia Medical Evaluation Form which states, in part:  (1) Robertson's pain is constantly severe enough to interfere with her attention and concentration; (2) Robertson has a marked limitation in her ability to deal with work stress; (3) Robertson's medication causes fatigue, shakiness, short-term memory impairment, and impairment of concentration; (4) Robertson can only walk two blocks without rest or severe pain; (5) Robertson can sit, stand, and walk for less than two hours at a time; (6) Robertson can occasionally carry up to 20 pounds but can never carry more than 20 pounds; and (7) Robertson would be absent from work more than three times a month.  Stip. Ex. 2 at 157-163.

Robertson's job description as an REI assistant store manager requires her to communicate effectively, be organized, problem solve, endure periods of high stress, work up to ten or more hours per day, spend at least six hours a day on her feet, manage as many as 45 employees, maintain her energy level for high business demand periods, and unload trucks and be able to lift a minimum of 40 pounds.  Stip. Ex. 2 at 137.  These job requirements appear

impossible in light of Dr. Cordes' assessment.  Thus, a trial is required to determine which

physician to believe.

## CONCLUSION

Highmark's Motion for Summary Judgment (#29) and Robertson's Motion for Summary

Judgment (#32) are denied.  A status conference will be held to set a trial date.

IT IS SO ORDERED.

Dated this   10th   day of October, 2006.


     /s/ Garr M. King
Garr M. King
United States District Judge